# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

PEGGY DURANT, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

BIG LOTS, INC.,

Defendant

Class Action Complaint

Jury Trial Demanded

Plaintiff Peggy Durant ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.      Big Lots, Inc. ("Defendant") manufactures and sells ground 100% Arabica Medium-Dark Roast Colombian Coffee in cans of 24.2 oz (686g) under its Fresh Finds brand ("Product").



2.     The back of the can tells purchasers the Product will provide "up to 210 suggested strength 6 fl oz servings."



3.     To get "up to 210 suggested strength 6 fl oz servings," purchasers are directed to follow the "Brew Instructions," using six ounces of water per one tablespoon of ground coffee.

| COLD WATER | FRESH FINDS COFFEE |
|---|---|
| 1 Serving (6 fl oz) | 1 Tablespoon |

4.     Plaintiff expected that when these directions were followed, the Product would make 210 cups or a small number above or below this.

5.     Plaintiff expected that if she used more than one tablespoon of ground

coffee per 6 fl oz, she would be able to make less than 210 cups.

6.     The representation that the Product makes "up to 210 suggested strength 6 fl oz servings" when the brew instructions directions were followed is false, deceptive, and misleading.

7.     Plaintiff followed the brew instructions and could not brew anywhere close to 210 cups.

8.     This was confirmed by independent laboratory analysis, revealing the Product could only make 152 6 fl oz servings when the brew instructions were followed.

9.     This number was 58 fewer servings than promised, a difference of twenty-eight (28) percent.

10.    No reasonable consumer will expect the number of cups to be closer to 150 than 210.

11.    Defendant failed to accurately calculate, disclose, measure and/or verify the number of servings and/or cups based on the Product's contents and preparation instructions.

12.    Consumers like Plaintiff could not know the Product was unable to make anywhere near the promised number of cups.

## JURISDICTION

13.    Jurisdiction is based on the Class Action Fairness Act of 2005

("CAFA"). 28 U.S.C. § 1332(d)(2).

14.    The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

15.    Plaintiff is a citizen of Florida.

16.    Defendant is an Ohio corporation with a principal place of business in Ohio.

17.    The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

18.    The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at over one hundred Big Lots retail stores within the State and online to citizens of this State.

19.    The Court has jurisdiction over Defendant because it transacts business within Florida and sells the Product to consumers within Florida from over one hundred Big Lots retail stores within the State and online to citizens of this State.

20.    Defendant transacts business in Florida, through the sale of the Product at its retail locations and online to citizens of Florida.

21.    Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

22.    Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by

misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

23.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

**VENUE**

24.   Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in Citrus County, Lake County, Marion County and/or Sumter County, which is where Plaintiff's causes of action accrued.

25.   Plaintiff purchased, used and/or consumed the Product in reliance on the labeling identified here in Citrus County, Lake County, Marion County and/or Sumter County.

26.   Plaintiff first became aware the labeling was false and misleading in Sumter County.

27.   Plaintiff resides in Sumter County.

## PARTIES

28.   Plaintiff Peggy Durant is a citizen of Sumter County, Florida.

29.   Defendant Big Lots, Inc., is an Ohio corporation with a principal place of business in Ohio.

30.   Defendant has over 1,400 stores in 47 states.

31.   Big Lots began by capitalizing on closeout deals on hard-to-find products at low prices.

32.   Big Lots is unique by combining discount retailing with warehouse-style quantities, allowing customers to maximize their value.

33.   Today, Big Lots sells a wide assortment of brand-name and private label items, such as food, furniture, seasonal items, electronics and accessories, home decor, toys, and gifts.

34.   One of Big Lots' private label brands is Fresh Finds.

35.   Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

36.   Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

37.   Products under the Fresh Finds brand have an industry-wide reputation

for quality and value.

38. In releasing products under the Fresh Finds brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

39. Defendant gets national brands to produce its private label items due to its loyal customer base and tough negotiating.

40. That Fresh Finds branded products met this high bar was or would be proven by focus groups, rating them above the name brand equivalent.

41. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

42. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

43. Private label products under the Fresh Finds brand benefit by their association with consumers' appreciation for the Big Lots brand as a whole.

44. The development of private label items is a growth area for Big Lots, as they select only top suppliers to develop and produce Fresh Finds products.

45. Plaintiff purchased the Product between August 2019 and the present, at Big Lot retail locations within Citrus County, Lake County, Marion County and/or

Sumter County.

46.   Plaintiff is like most consumers of ground coffee who look to the number of cups or servings represented on the label as capable of being made.

47.   Plaintiff reviewed and relied on the labeling which told purchasers the Product will provide "up to 210 suggested strength 6 fl oz servings."

48.   Plaintiff bought the Product because she expected it could make the number of cups promised on the label, or a small number above or below this number because that is what it said.

49.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than approximately $5.00 for 24.2 oz (686g), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

50.   Plaintiff bought the Product at or exceeding the above-referenced price.

51.   Plaintiff paid more for the Product than she would have had she known its claims about the number of cups it could make were false and misleading, as she would not have bought it or would have paid less.

52.   The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

53. Plaintiff seeks to represent the following class:

> All persons in the State of Florida who
> purchased the Product in Florida during the
> statutes of limitations for each cause of action
> alleged.

54. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

55. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

56. Plaintiff is an adequate representative because her interests do not conflict with other members.

57. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

58. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

59. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

## COUNT I

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201, *et seq.*

60.   Plaintiff incorporates by reference paragraphs 1-36.

61.   Plaintiff believed the Product could make 210 cups of coffee when she used the label's brew instructions of 1 tablespoon per 6 fl oz serving, or a small number above or below this number, because that is what it said.

62.   Plaintiff paid more for the Product, would not have purchased it or paid as much if she knew that using the label's brew instructions of 1 tablespoon per 6 fl oz serving, she would not be able to make 210 cups or servings or a small number above or below this number, but 152 6 fl oz servings, 58 fewer servings than promised, a difference of twenty-eight (28) percent.

63.   Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling of the Product, a deceptive practice under this State's consumer protection laws, by paying more for it than she otherwise would have.

64.   Plaintiff will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

65.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

## COUNT II
### False and Misleading Adverting,
### Fla. Stat. § 817.41

66.   Plaintiff incorporates by reference paragraphs 1-36.

67.   Defendant made misrepresentations and omissions of material fact, that the Product could make 210 cups of coffee when she used the label's brew instructions of 1 tablespoon per 6 fl oz serving, or a small number above or below this number, through its advertisements and marketing in various forms of media, product packaging and descriptions, and targeted digital advertising.

68.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

69.   Plaintiff paid more for the Product, would not have purchased it or paid as much if she knew that using the label's brew instructions of 1 tablespoon per 6 fl oz serving, she would not be able to make 210 cups or servings or a small number above or below this number, but 152 6 fl oz servings, 58 fewer servings than promised, a difference of twenty-eight (28) percent.

70.   Defendant knew these statements were false and/or misleading.

71.   Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product.

72.   Plaintiff and class members did in fact rely upon these statements.

73.   Reliance was reasonable and justified because of Big Lots' reputation as

a seller of the highest quality items under its private label brand, honestly marketed to consumers.

74.    As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product and the premium amount paid.

## COUNT III
### Breach of Express Warranty

75.    Plaintiff incorporates by reference paragraphs 1-36.

76.    The Product was manufactured, identified, marketed, and sold by Defendant and expressly warranted to Plaintiff and class members that the Product could make 210 cups of coffee when using the label's brew instructions of 1 tablespoon per 6 fl oz serving, or a small number above or below this number.

77.    Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and/or targeted digital advertising.

78.    Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as ground coffee which made a relatively high number of cups or servings of coffee and developed its marketing and labeling to directly meet those needs and desires.

79.   Defendant's representations affirmed and promised that the Product could make 210 cups of coffee when using the label's brew instructions of 1 tablespoon per 6 fl oz serving, or a small number above or below this number.

80.   Defendant described the Product so Plaintiff and consumers believed it could make 210 cups of coffee when using the label's brew instructions of 1 tablespoon per 6 fl oz serving, or a small number above or below this number, which became part of the basis of the bargain that it would conform to its affirmations and promises.

81.   Plaintiff recently became aware of Defendant's breach of the Product's express warranties.

82.   Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and/or their employees.

83.   Plaintiff hereby provides notice to Defendant that it breached the Product's express warranties.

84.   Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

85.   The Product did not conform to its affirmations of fact and promises due to Defendant's actions, because when following the brew instructions on the label, it could only make 152 6 fl oz servings, 58 fewer servings than promised, a

difference of twenty-eight (28) percent.

86.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT IV
### Fraud

87.   Plaintiff incorporates by reference paragraphs 1-36.

88.   Plaintiff satisfied the requirements of fraud by establishing relevant elements with sufficient particularity.

89.   WHO: Defendant, Big Lots, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing it could make 210 cups of coffee when using the label's brew instructions of 1 tablespoon per 6 fl oz serving, or a small number above or below this number.

90.   WHAT: Defendant's conduct was and continues to be fraudulent because it deceives consumers into believing the Product could make 210 cups of coffee when using the label's brew instructions of 1 tablespoon per 6 fl oz serving, or a small number above or below this number.

91.   Defendant omitted telling consumers the Product could make 210 cups of coffee when using the label's brew instructions of 1 tablespoon per 6 fl oz serving, or a small number above or below this number, because when following the brew instructions on the label, it could only make 152 6 fl oz servings, 58 fewer servings than promised, a difference of twenty-eight (28) percent.

92.    Defendant knew or should have known this information was material to all reasonable consumers and impacts their purchasing decisions.

93.    Defendant conducts research on consumer preferences and is aware of consumer demand for value, of which the number of cups or servings of coffee that a ground coffee product could make is a significant factor.

94.    The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

95.    Yet, Defendant has represented and/or continues to represent that the Product could make 210 cups of coffee when using the label's brew instructions of 1 tablespoon per 6 fl oz serving, or a small number above or below this number, even though when following the brew instructions on the label, it could only make 152 6 fl oz servings, 58 fewer servings than promised, a difference of twenty-eight (28) percent.

96.    WHEN: Defendant made these material misrepresentations and/or omissions detailed herein, continuously throughout the applicable class period and through the filing of this Complaint.

97.    WHERE: Defendant's material misrepresentations and omissions, that the Product could make 210 cups of coffee when using the label's brew instructions of 1 tablespoon per 6 fl oz serving, or a small number above or below this number,

even though when following the brew instructions on the label, it could only make

152 6 fl oz servings, 58 fewer servings than promised, a difference of twenty-eight

(28) percent, were made in the advertising and marketing of the Product, on the front

of the packaging, which all consumers buying would inevitably see and take notice

of.

98.   HOW: Defendant made written and visual misrepresentations and

omissions in the advertising and marketing of the Product, that it could make 210

cups or servings of coffee when using the label's brew instructions of 1 tablespoon

per 6 fl oz serving, or a small number above or below this number, even though when

following the brew instructions on the label, it could only make 152 6 fl oz servings,

58 fewer servings than promised, a difference of twenty-eight (28) percent.

99.   And as discussed in detail throughout this Complaint, Plaintiff and class

members read and relied on Defendant's representations and omissions before

purchasing the Product.

100. WHY: Defendant misrepresented that the Product could make 210 cups

of coffee when using the label's brew instructions of 1 tablespoon per 6 fl oz serving,

or a small number above or below this number, even though when following the

brew instructions on the label, it could only make 152 6 fl oz servings, 58 fewer

servings than promised, a difference of twenty-eight (28) percent, for the express

purpose of inducing Plaintiff and class members to purchase the Product at a

substantial price premium, in part based on consumer demand for value when purchasing ground coffee.

101. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout this State.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   September 11, 2023

Respectfully submitted,

/s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

William Wright

The Wright Law Office, P.A.

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff*
\**Pro Hac Vice* Application Forthcoming