**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

PEGGY DURANT,

        Plaintiff,

v.                                                                     Case No: 5:23-cv-561-GAP-PRL

BIG LOTS, INC.,

        Defendant

## ORDER

This cause came before the Court for consideration without oral argument on Defendant's Motion to Dismiss (Doc. 11) and Request for Oral Argument (Doc. 13). The Court has also considered Plaintiff's Response in Opposition (Doc. 21).

**I.  Background**

On September 11, 2023, Plaintiff Peggy Durant ("Plaintiff") filed a four-count class action Complaint against Defendant Big Lots, Inc. ("Defendant") alleging violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") and the Florida false and misleading advertising statute, in addition to common law claims for breach of express warranty and fraud. *See generally* Doc. 1. Plaintiff's Complaint alleges that the label on certain "Fresh Finds" branded coffee containers ("Product") manufactured and sold by Defendant is false, deceptive, and

misleading. *Id.*, ¶ 6. As a result, Plaintiff contends she overpaid for the Product based on Defendant's misleading representations and seeks damages for her economic injury. *Id.*, ¶¶ 62-65, 69, 74.

Plaintiff claims that the Product's label states that the container will produce "up to 210 suggested strength 6 fl oz servings." *Id.*, ¶ 2. However, when she followed the brewing instructions for single servings—one tablespoon of coffee per 6 fluid ounce serving—she "could not brew anywhere close to 210 cups." *Id.*, ¶ 5-7. This conclusion is supported by "independent laboratory analysis" which found that the Product could only yield 152 six-ounce servings when following the brewing instructions. *Id.*, ¶ 8.

The following photographs depict the front and back sides of the Product's label as presented in Plaintiff's Complaint:





*Id.*, ¶¶ 1-2. While Plaintiff's Complaint recounts the brew instructions for a single serving, *id.*, ¶ 3, the Product's label lists several other options for brewing. *Id.*, ¶ 2. Notably, larger batches require less coffee: whereas the ratio of coffee to number of servings is 1:1 under the single-serve brew instructions, under the five- and ten-serving brew instructions, that ratio is 0.8:1.[1] *See id.*

The Court additionally notes at the outset that counsel for Plaintiff has a reputation for filing labeling and consumer fraud lawsuits "seemingly covering just about every aisle in the grocery store, without much success." *Matthews v. Polar Corp.*, No. 1:22-cv-649, Doc. 35 (N.D. Ill. Apr. 6, 2023); *see also ibid.* at Doc. 38; Doc. 40[2]. Of particular relevance, Plaintiff's counsel filed a near-identical lawsuit in the

---

[1] 1/4 cup = 4 tablespoons; 1/2 cup = 8 tablespoons. *See, e.g.*, Sarah Bond, *How Many Tablespoons Are in a Cup?* LIVEEATLEARN, (March 28, 2023) https://www.liveeatlearn.com/how-many-tablespoons-are-in-a-cup/.

[2] *See Matthews v. Polar Corp.*, No. 1:22-cv-649, Doc. 40 (N.D. Ill. Apr. 6, 2023) ("Suffice it to

Western District of New York in 2021, alleging that the same product label—Fresh Finds coffee purporting to produce up to 210 six fluid ounce servings—was false, deceptive, and misleading under New York consumer protection statutes. *See Devey v. Big Lots, Inc.*, No. 6:21-cv-6688-DGL, Doc. 1, ¶ 9 (W.D. N.Y. Nov. 11, 2022). That case was dismissed for failure to state a claim, with the district court finding that the label would not mislead a reasonable consumer as a matter of law. *Devey v. Big Lots, Inc.*, 635 F.Supp.3d 205, 211-13 (W.D. N.Y. Oct. 12, 2022).

With this backdrop, Defendant's motion to dismiss is ripe for adjudication.

**II.  Legal Standard**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g., Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

---

say that this case about carbonated lemon water has left this Court with a sour taste in its mouth. The theory of the case was not close to viable. The facial deficiency of the complaint prompted this Court to order Plaintiff's counsel to file a spreadsheet identifying all similar consumer cases that he has filed across the country. (Dckt. Nos. [35, 38]) This Court will keep that spreadsheet in hand and in mind, just in case Plaintiff's counsel files another case in this district with the same basic theory. Going forward, counsel should proceed with eyes wide open. The complaint is dismissed. The case is closed.").

However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### III.   Analysis

First, in her Response to Defendant's Motion to Dismiss, Plaintiff withdrew her claims for breach of express warranty (Count III) and common law fraud (Count IV). Doc. 21 at 6, n.1. Those claims are therefore due to be **DISMISSED with**

**prejudice**.[3] *See, e.g.,* Fed. R. Civ. P. 15(a); *Ferron v. West*, 10 F.Supp.2d 1363, 1365 (S.D. Ga. 1998); *Allmond v. Jacksonville Internal Affs. Dep't*, No. 3:05-cv-441-J-25MMH, 2005 WL 8159648, *4, *5, n.3 (M.D. Fla. Nov. 23, 2005). Consequently, the Court analyses only Defendant's arguments for dismissing Plaintiff's remaining claims in Counts I and II. *See id.*

*A. Count I – FDUPTA Claim*

"A consumer claim for damages under FDUPTA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Defendant does not contest the causation and actual damages prongs, arguing simply that Plaintiff has not stated a claim because she has not alleged a false, deceptive, or misleading statement." *See generally* Doc. 11 at 9-21. The Court agrees.

Under the FDUTPA, "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Fla. Stat. § 501.204(1); *see also Zlotnik v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). Any person who has suffered losses as a result of such a violation may commence a private action to recover actual damages, attorney's fees, and costs. Fla. Stat. § 501.211(2); *Zlotnik*, 480

---

[3] *See also Glass v. Lahood*, 786 F. Supp. 2d 189, 210 (D.D.C. 2011) aff'd, No. 11-5144, 2011 WL 6759550 (D.C. Cir. Dec. 8, 2011) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

F.3d at 1284. The Florida Supreme Court has held that "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003) (quotation marks and citation omitted). There must be "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer." *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000); *Zlotnik*, 480 F.3d at 1284.

Plaintiff here alleges that the Product's label is misleading because when she—and an independent laboratory[4]—brewed the coffee based upon the label's instructions for one serving, she came up woefully short of 210 six-ounce servings. Doc. 1, ¶¶ 3-8. The 152 servings Plaintiff (and the laboratory) was able to brew

---

[4] Defendant has noted that counsel for the Plaintiff was found in contempt of court in the Northern District of New York recently for filing a frivolous claim. *See Brownell v. Starbucks Coffee Co.*, 2023 WL 9053058, (N.D. N.Y. Nov. 30, 2023) ("Mr. Sheehan is aware that he files class action lawsuits primarily pertaining to allegedly false labeling on consumer products… that plainly do not meet the pleading requirements for such claims on their faces…Nonetheless…Mr. Sheehan continues to file these frivolous actions in violation of Rule 11(b)(2) of the Federal Rules of Civil Procedure."). The court in *Brownell* reached its conclusion, in part, because Plaintiff's counsel had asserted in his client's complaint that "independent laboratory analyses" had been conducted, when in in actuality, they were not conducted until well after the complaint was filed. *Id.*, *3-*5; *see also Elder v. Bimbo Bakeries USA, Inc.*, 2023 WL 6382354, at *4 (S.D. Ill. Sept. 29, 2023).

Defendant here certifies that it has twice requested the purported "independent laboratory analysis" in this case—on December 14, 2023, and again on January 10, 2024—but Mr. Sheehan has, to date, refused to produce any such report. Doc. 11 at 2, n.1; Doc. 24 at 7-8.

following those instructions amounted to 28% fewer "than promised." *Id.*, ¶ 9. Defendant counters, however, that Plaintiff entirely ignores the remainder of the label which contains alternative brewing instructions for larger batches. Doc. 11 at 13. Pointing to the *Devey* court's findings, Defendant explains that when brewed in larger batches the Product yields at least 190 six-ounce servings, only a 9.5% reduction from the supposed maximum of 210. *Id.* at 13-14 (quoting *Devey*, 635 F.Supp.3d at 212). Plaintiff does not dispute this finding in her Response, instead arguing that multiple mixing options can confuse consumers and that each different option should have a bespoke "up to" amount it can yield.[5] Doc. 21 at 13-14 (citing *Arthur v. United Indus. Corp.*, 2018 WL 1472500 (C.D. Ca. Mar. 23, 2018)).

However, *Arthur* does not stand for the proposition that each option should include a distinct "up to" yield disclaimer. 2018 WL 1472500 at *7. Indeed, it was the very existence of differing "up to" yields which the court found might confuse

---

[5] Plaintiff also argues that whether the large-batch directions produce 190 six-ounce servings is a question of fact that is "irrelevant" on a motion to dismiss. Doc. 21 at 15 (citation omitted). However, the quotation she relies on from a Western District of Missouri case holds that such is the case where there is a "significant" disparity between an advertised quantity and the amount a consumer can actually produce. *Id.* at 14-15 (quoting *In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, *8 (W.D. Mo. Dec. 28, 2021). Here, the fact that the Product can produce at least 190 six-ounce servings when alternative brewing instructions are followed is certainly relevant in determining whether there is a "significant disparity"—particularly where Plaintiff does not dispute that calculation. *See id.*; Doc. 21 at 13-14. Moreover, unlike some cases cited by Plaintiff, the alternative brewing instructions on the Product here were not hidden in a booklet label, they were printed in the same conspicuous table as those that Plaintiff followed. *See, e.g.*, *Rawa v. Monsanto Co.*, No. 17-cv-01252, 2017 WL 3392090, *4 (E.D. Mo. Aug. 7, 2017).

consumers. *Id.* The court found that the plaintiff stated a claim in *Arthur* primarily because the label in question prominently displayed one "up to" value on the front label and then provided more detailed, differing "up to" values on the reverse label. *Id.* Those facts are not present here. Plaintiff's Complaint does not allege—because it cannot allege, *see infra* at 2-3—that the Product here exhibits any such prominent advertisement on its front label that is contradicted by details on the back. *See* Doc. 1, ¶ 2 ("The *back of the can* tells purchasers the Product will provide 'up to 210 suggested strength 6 fl oz servings.") (emphasis added). *Arthur*, a nonbinding district court decision, is inapposite here. 2018 WL 1472500 at *7.

As the Court in *Sorin v. Folger Coffee Company* recognized, " '[u]p to' a certain number of coffee cups would lead a reasonable consumer to expect that the actual number of coffee cups produced could be less." 2021 WL 5545292, *2 (S.D. Fla. Mar. 5, 2021). This Court is persuaded by the Second Circuit's reasoning—and common sense—that " 'up to,' is not a guarantee that the number of cups will be reached." *Id.* (citing *Funk v. Time Warner Cable*, 714 F.3d 739, 742, n.3 (2d Cir. 2013)). Reasonable consumers do not perceive "up to" statements like those on this Product as a guarantee because their plain meaning clearly establishes a "ceiling, not a floor." *Brodsky v. Aldi Inc.*, No. 20-cv-7632, 2021 WL 4439304, *5 (N.D. Ill. Sept. 28, 2021). Indeed, even Plaintiff recognizes in her Response that her Complaint does not allege

that the "up to 210" servings language guaranteed that the number of cups would be reached. Doc. 21 at 5.

Nor does Plaintiff allege anywhere in her Complaint or papers that the Product's label inaccurately reports the weight of ground coffee within. *See* Doc. 1; Doc. 11 at 14-15. Indeed, Plaintiff offers no rebuttal to Defendant's contention that the Product yields over 90% of the purported "up to 210" servings if the larger-batch brew instructions are followed. *See* Doc. 21 at 13-14; Doc. 24 at 8. This nominal discrepancy is distinguishable from the substantially shorter 70% yields alleged in cases like *In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, *8 (W.D. Mo. Dec. 28, 2021). Plaintiff's Complaint simply does not allege a "significant disparity" sufficient to create a fact issue.[6] *See id.*

Instead, in a serpentine effort to salvage her claims, Plaintiff insists the Court must analyze the "impression created by the representation"—which the *Sorin* court allegedly failed to do. *Id.* (citing *F.T.C. v. Peoples Credit First, LLC*, 2005 WL 3468588, *5 (M.D. Fla. Dec. 18, 2005)). This contention is baseless, however, given

---

[6] Plaintiff cites to *Womick v. Kroger Co.* for the proposition that similar levels of discrepancy have been found sufficient to state a claim. No. 21-CV-00574-NJR, 2022 WL 673095, *1 (S.D. Ill. Mar. 7, 2022). However, *Womick* was analyzed under distinguishable Illinois law that is not present in this case. *Id.* at *2-*4. Moreover, in *Womick*, the product labels advertised their respective yields prominently on the front label with the more precise phrase "makes about," as opposed to the more ambiguous ceiling denoted by the "up to" phrase deployed here in inconspicuous type on the back label. No. 21-CV-00574-NJR, Doc. 1-1, ¶ 13 (S.D. Ill. June 11, 2021); *see also Brodsky v. Aldi Inc.*, No. 20-cv-7632, 2021 WL 4439304, *5 (N.D. Ill. Sept. 28, 2021).

that this Court is already bound—as was the *Sorin* court—by Florida law to broadly consider whether "a *representation, omission, or practice*…is likely to mislead the consumer acting reasonably *in the circumstances.*" *PNR, Inc,* 842 So.2d at 777 (emphasis added). This directive certainly encompasses an analysis of the "impression" created by the Product's label. *See id.; F.T.C.*, 2005 WL 3468588 at *5.

It is patently implausible that any reasonable consumer would be deceived by the Product's label here. *See Sorin*, 2021 WL 5545292, *2; *Brodsky*, 2021 WL 4439304 at 5. Plaintiff's entire Complaint is premised on the position that she cast her eyes only upon the single serve brew instructions and that because they alone do not satisfy her "impression" of what a subtle "up to" statement means, the label is misleading. *See generally* Doc. 21 at 5-9. This is not the impression of a reasonable consumer—or reputable lawyer. *See Brodsky*, 2021 WL 4430394 at *5.

Therefore, because her Complaint does not allege a misleading statement, Plaintiff cannot state a claim under FDUPTA and Count I is due to be dismissed. *See Rollins*, 951 So. at 869. Moreover, because any factual amendment to Plaintiff's Complaint would be futile, it will be **DISMISSED with prejudice.** *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

### B. *Count II – False and Misleading Advertising*

Similarly, successfully pleading a claim for false and misleading advertising under Fla. Stat. § 817.41 requires an allegation that "the representor made a misrepresentation of material fact."[7] *Samuels v. King Motor Co. of Ft. Lauderdale*, 782 So.2d 489 (Fla. 4th DCA 2001). For the same reasons set out above, Plaintiff's Count II claim for False and Misleading Advertising fails to plausibly allege a misrepresentation of material fact and is therefore due to be **DISMISSED with prejudice**. *See id*.

### IV. Conclusion

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss is hereby **GRANTED**. Defendant's Request for Oral Argument is **DENIED as moot**.

Plaintiff's Complaint is **DISMISSED with prejudice**.

---

[7] "Although the statute does not say it, the case law that has developed since the adoption of section 817.41(1) requires one seeking to maintain a civil action for [false and misleading advertising] to prove each of the elements of common law fraud in the inducement, including reliance and detriment, in order to recover damages." *Joseph v. Liberty Nat. Bank*, 873 So.2d 384, 388 (Fla. 5th DCA Apr. 8, 2004) (citing *Smith v. Mellon Bank*, 957 F.2d 856 (11th Cir.1992); *Burton v. Linotype Co.*, 556 So.2d 1126 (Fla. 3d DCA 1989), review denied, 564 So.2d 1086 (Fla.1990)).

"In *Samuels v. King Motor Co. of Ft. Lauderdale*, 782 So.2d 489 (Fla. 4th DCA 2001), the court held succinctly that in order to state a cause of action for fraud in the inducement a plaintiff must allege that (a) the representor made a misrepresentation of a material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation (Emphasis added)." *Joseph*, 873 So.2d at 388.

**DONE** and **ORDERED** in Orlando, Florida on March 26, 2024.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties