# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

PEGGY DURANT,

     Plaintiff,

v.              Case No:   5:23-cv-561-GAP-PRL

BIG LOTS, INC.,

     Defendant

_____

## ORDER

  This matter came before the Court following a June 26, 2024, hearing on Defendant's Motion for Attorney's Fees and for Sanctions (Doc. 25). *See* Doc. 42. The Court has also considered Plaintiff's Memorandum in Opposition (Doc. 37) and Defendant's Reply (Doc. 41).

### I.  Background

  On September 11, 2023, Plaintiff Peggy Durant ("Plaintiff") filed a four-count class action Complaint against Defendant Big Lots, Inc. ("Defendant") alleging violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") and the Florida false and misleading advertising statute, in addition to common law

claims for breach of express warranty and fraud.[1] *See generally* Doc. 1. Plaintiff's Complaint alleged that the label on certain "Fresh Finds" branded coffee containers ("Product") manufactured and sold by Defendant contained false, deceptive, and misleading information. *Id.*, ¶ 6.

Defendant moved to dismiss the Complaint on January 12, 2024, arguing that the Product's labeling would not mislead a consumer as a matter of law. Doc. 11. The Court granted Defendant's motion and dismissed the case with prejudice after finding it "patently implausible that any reasonable consumer would be deceived by the Product's label here." Doc. 29 at 11. Likewise, the Court found Plaintiff's theory of the case was not that of a "reputable lawyer." *Id.* The Court entered judgment in favor of Defendant on May 1, 2024. *See* Doc. 34.

On May 15, 2024, Defendant filed a Motion for Attorney's Fees and Costs against Plaintiff, and Motion for Sanctions against Plaintiff's attorney, Spencer Sheehan ("Sheehan"). Doc. 35. Defendant argues that it is entitled to mandatory and discretionary fee awards against Plaintiff pursuant to the Florida statutes giving rise to her claims. *Id.* at 1. However, Defendant asks this Court to collect those fees solely

---

[1] The Court has jurisdiction over this case pursuant to the Class Action Fairness Act. 28 U.S.C. § 1332(d)(2); Doc. 1, ¶ 13. Defendant is an Ohio corporation and Plaintiff, a citizen of Florida, represented a proposed class of Floridian consumers seeking in excess of $5 million in damages. *Id.*, ¶¶ 14-23.

from Sheehan as a sanction, pursuant to its inherent authority, for his bad faith litigation conduct. *Id.* at 1-2. In Plaintiff's Response, her lead counsel, William Wright ("Wright"), asserts that Sheehan is not an attorney of record in this matter and otherwise opposes Defendant's Motion on various grounds. Doc. 37. In its Reply, Defendant accuses Sheehan of engaging in the unauthorized practice of law and reiterates its positions. Doc. 41.

The Court granted Defendant's motion for oral argument and set a hearing for June 26, 2024, to provide Plaintiff and her counsel the opportunity to explain the accusations leveled against them. Doc. 40. At the conclusion of the hearing, the Court voiced its intention to grant Defendant's motion, with this Order to follow.

## II.   Analysis

### A. *Statutory Fees*

#### 1.  False Advertising Statute

Defendant first argues that it is entitled to mandatory fees against Plaintiff under Florida's False Advertising Statute because it is the prevailing party.[2] Doc. 35 at 10. The statute states that:

---

[2] Where a "district court dismissed [p]laintiff's action against [d]efendant"—even without prejudice—"[d]efendant is the prevailing party under Florida law." *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F.App'x 796, 801 (11th Cir. 2014) (citing *Valcarcel v. Chase Bank USA NA*, 54 So.3d 989, 991 (Fla.Dist.Ct.App.2010)). Therefore, since the Court dismissed Plaintiff's Complaint and entered Judgment for Defendant, Defendant is plainly the "prevailing party" under Florida law. *See id.*; Doc. 29; Doc. 34; *see also Diamond Aircraft Indus., Inc. v. Horowitch*,

> Any person prevailing in a civil action for violation of this section **shall** be awarded costs, including reasonable attorney's fees, and may be awarded punitive damages in addition to actual damages proven. This provision is in addition to any other remedies prescribed by law.

Fla. Stat. § 817.41(6) (emphasis added). Binding Eleventh Circuit precedent makes plain that fee-shifting statutes like this one which direct that costs "shall" be awarded "eliminate the district court's discretion to make a fee award."[3] *Rath v. Marcoski*, 898 F.3d 1306, 1310 (11th Cir. 2018).

Plaintiff brought her Count II claim against Defendant for False and Misleading Advertising pursuant to Fla. Stat. § 817.41. Doc. 1, ¶¶ 66-74. That Count was dismissed with prejudice after the Court found that Plaintiff's Complaint failed to plausibly allege a misrepresentation of material fact. Doc. 29 at 12. Therefore, Plaintiff is responsible for reasonable costs and fees as the non-prevailing party and Defendant's Motion is due to be **GRANTED** on this ground. *See, e.g., Whiteside v.*

---

107 So.3d 362, 369 (Fla. 2013) ("[Defendant here] is entitled to attorney's fees under section 501.2105(1) because [Plaintiff]…filed an action against [Defendant] *under* FDUPTA and ultimately was the nonprevailing party.") (emphasis original).

[3] Plaintiff's hollow argument regarding legislative intent has already been rejected by appellate courts. *See Whiteside v. Joseph Harris Co.*, 491 So. 2d 1215, (Fla. Dis. Ct. App. 1986). Moreover, another court's casual usage of the word "may" in a Report and Recommendation does not convert a mandatory fee-shifting provision into a discretionary one. *See Baby Buddies, Inc. v. Toys R Us, Inc.*, 2011 WL 4382450, at *6 (M.D. Fla. Aug. 9, 2011). As the Court will explain below, however, it would exercise its discretion to award fees under § 817.41(6) even if the provision were not mandatory. *See infra*, Sec. II.B.

*Joseph Harris Co.*, 491 So. 2d 1215, 1215 (Fla. Dist. Ct. App. 1986) ("As the prevailing party in this action, defendant was entitled to an award of fees under section 817.46(6).")).

## 2. FDUPTA

Defendant likewise contends that it is entitled to reasonable costs and attorney's fees against Plaintiff under FDUPTA. Doc. 35 at 10-14. "By invoking FDUPTA and seeking redress under its remedial provisions, [plaintiffs] expose[] [themselves] to both the benefits and the possible consequences of that act's provisions." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So.3d 362, 369 (Fla. 2013). The statute states:

> In any civil litigation resulting from an act or practice involving a violation of this part…the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, **may** receive his or her reasonable attorney's fees and costs from the nonprevailing party.

Fla. Stat. § 501.2105(1) (emphasis added). Since the Court already determined that Defendant is a prevailing party in this action, *see infra* at n.2, it now has discretion to award attorney's fees and costs. *See Forte v. All County Towing Inc.*, 336 So.3d 316, 320-22 (Fla. Dist. Ct. App. 2022). Florida law counsels that courts "might" consider seven non-exhaustive factors in exercising their discretion:

(1) the scope and history of the litigation;

(2) the ability of the opposing party to satisfy an award of fees;

(3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;

(4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;

(5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;

(6) whether the defense raised a defense mainly to frustrate or stall; [and]

(7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

*Id.* at 321 (citing *Humane Society of Broward County, Inc. v. Florida Humane Society*, 951 So. 2d 966 (Fla. 4th DCA 2007)).

For the reasons discussed below, the *Humane Society* factors strongly favor an award for Defendant in this case. 951 So.2d at 971-72; *see infra* at sec. II.B. Therefore, Plaintiff is responsible for reasonable fees and costs under FDUPTA and Defendant's Motion is also due to be **GRANTED** on these grounds.[4] *Id.*; Fla. Stat. § 501.2105(1).

_____

[4] Even though "a court may allocate attorney's fees under section 501.2105 for only the FDUPTA portion of an action," such an allocation and any dispute over the scope of fees is moot here. *See Diamond Aircraft*, 107 So.3d at 370. All of Plaintiff's claims arose from the same transaction so there are no claims "unrelated to the FDUPTA claim." *Id.*; *see also* Doc. 1. Moreover, Plaintiff did not respond to Defendant's argument in support of the same conclusion, thereby conceding any opposition. *See Glass v. Lahood*, 786 F. Supp. 2d 189, 210 (D.D.C. 2011) aff'd, No. 11-5144, 2011 WL 6759550 (D.C. Cir. Dec. 8, 2011) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

*B.  Sanctions*

In their Motion, Defendant's acknowledge that their available statutory fees must be assessed against Plaintiff and therefore seek to hold Plaintiff's counsel, Sheehan, accountable for those fees through this Court's inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process."[5] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); Doc. 35 at 1-2. Defendant argues that Sheehan's bad faith conduct includes filing a knowingly frivolous claim, fabricating a laboratory analysis, and the unauthorized practice of law, among other transgressions. Doc. 35 at 15-24. Sheehan, in part through Plaintiff, protests that there is no evidence here of bad faith and that sanctions are unwarranted for whatever accidental transgressions he has perpetrated. Doc. 37 at 15-24.

Courts may exercise their inherent authority "to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). "[I]f a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Chambers*, 501 U.S. at 46 (internal quotations and citations omitted). "Moreover, a court has

---

[5]  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) ("Congress has not repudiated the judicially fashioned exceptions to the American Rule, which were founded in the inherent power of the courts.") (internal quotations and citations omitted).

the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Id.* at 44.

"This power is unlocked only upon a finding of bad faith." *Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021) (internal quotations and citation omitted). "A finding of bad faith is warranted where, among other things, a frivolous argument is knowingly or recklessly raised." *Id.* (internal quotations omitted) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)). This is especially so where plaintiffs have been forewarned. *See Trump v. Clinton*, 653 F.Supp.3d 1198, 1219 (S.D. Fla. Jan. 19, 2023) ("Thus, while a litigant's conduct in other cases would normally not be relevant, when the court is faced with a sanctions motion against a repeat offender, undeterred by admonitions, it has the authority to consider that litigant's outside conduct.") (citing *Johnson*, 9 F.4th at 1313-14).

The FDUPTA factors provide a strong framework to assess the conduct of Plaintiff's counsel and whether it rises to the level of bad faith. *See infra* at sec. II.A.2. Accordingly, the Court now examines these factors in line with the parties' briefing to determine whether sanctions are warranted.

### 1.  Scope and History of the Litigation

The Court turns first to the scope and history of this litigation. A court may reasonably determine this factor weighs against a party where the "litigation should have been simpler, but had been drawn out and made unreasonably contentious"

by their actions. *Chow c. Chak Yam Chau*, 640 F.App'x 834, 843 (11th Cir. 2015). Defendant points to the nearly identical lawsuit Sheehan litigated in the Western District of New York as strong evidence that this factor weighs in favor of Defendant. Doc. 35 at 12; *see also Devey v. Big Lots, Inc.*, 635 F.Supp.3d 205 (W.D. N.Y. Oct. 12, 2022). The Court agrees.

Writing in Response to Defendant's Motion, Plaintiff rests primarily on the frivolous contention that Sheehan has not appeared in the instant matter—despite acknowledging in the same breath that "Sheehan's name was on the Complaint"— and that therefore, her instant case is unrelated to the identical complaint filed in New York. Doc. 37 at 6; *see also* Local Rule 2.01(b)(1). As the Court will describe in greater detail below, Sheehan has unquestionably appeared as counsel for Plaintiff in this action and her suggestion that he has not is in keeping with her counsel's dubious *modus operandi*.

Plaintiff's other arguments are equally unpersuasive. Her attempt to distinguish this case from the facts of *Armstrong* based on "those plaintiffs consistently disregard[ing] the Court's procedures and requirements" is misplaced. Doc. 37 at 6; *Armstrong v. Knauf Gips KG*, No: 8:21-cv-2771-SCB-DAB, 2023 WL 9196688, *6 (M.D. Fla. Oct. 23, 2023), *report and recomm. adopted*, 2023 WL 9196666, at *1 (M.D. Fla. Dec. 1, 2023). First, as described below, Sheehan has *flagrantly* disregarded this Court's procedures and requirements since the inception of this

dispute. *See infra* at Sec. II.B.5. But most importantly, Defendant cited to *Armstrong* primarily for the proposition that the Court may consider the broader scope of Plaintiff's counsel's litigation efforts, not because its facts were the same. *See* Doc. 35 at 11-12; *see also Johnson*, 9 F.4th at 1314 ("The court has the inherent power to investigate the scope and extent of this scheme that it deemed to threaten the integrity of the court.").

Plaintiff also implies that she could not have been a party to the New York action as a Florida resident and therefore this case was not frivolous. Doc. 37 at 7. This dubious argument underscores the frivolity Sheehan and his enablers inflict upon the judiciary and his defendants, carefully crafting his complaints so that when a judge in one district or division rules against him, he can "in good faith," re-file the same or similar action elsewhere in hopes of achieving success.

Sheehan collects consumer plaintiffs through social media advertising in whose name he can file and re-file complaints in jurisdictions around the nation. *See, e.g., Hoffman v. Arizona Beverages USA, LLC*, No. 6:23-cv-1213-JSS-LHP, Doc. 42, Doc. 42-6, Doc. 42-11, Doc. 42-12 (M.D. Fla. May 10, 2024) (describing Sheehan's method of soliciting consumer clients); *see also Matthews v. Polar Corp.*, No. 1:22-cv-649, Doc. 36, Doc. 36-1, Doc. 40 (N.D. Ill. Apr. 6, 2023) (collecting all of Sheehan's class action consumer cases filed in federal court at the time). In this manner, Sheehan and his associates (*e.g.*, Wright) pursue nationwide defendants (*e.g.*,

Defendant) around the country in court after court seeking a different result from the same claims. *See, e.g., Devey*, 635 F.Supp.3d at 205.

It is plain upon reviewing the scope and history of this litigation, and its predecessors, that Plaintiff and her counsel have "drawn out and made [this matter—and countless others—]unreasonably contentious." *See Chow*, 640 F.App'x at 843. This factor weighs heavily in favor of awarding fees and costs.

### 2.  Merits and Frivolousness of the Claims[6]

The Court finds that the fourth and fifth factors likewise weigh heavily in favor of an award in this case. Defendant again points to the fact that Plaintiff brought identical claims to those that a federal court already dismissed in *Devey*, one of Sheehan's prior cases—especially as regards the facially baseless common law claims.[7] 635 F.Supp.3d at 205; Doc. 35 at 12. Plaintiff pleads that "[a] losing argument is not the same as a frivolous one." Doc. 37 at 7 (citing *Figueira v. School Bd. of Miami-Dade Cty.*, No. 06-21828-CIV-LENARD/GARBER, 2009 WL 10697979, *1 (S.D. Fla. Sept. 16, 2009)). While that sentiment holds true in many cases,

---

[6] The parties next combined their analysis of the fourth and fifth factors—the merits of the claims and their frivolousness—and the Court does the same.

[7] As Defendant recognized, for example, the breach of express warranty claim has been repeatedly dismissed from Sheehan's cases—including *Devey*—for failure to allege pre-suit notice, which he plainly lacked before filing this Complaint. *See Devey v. Big Lots, Inc.*, 635 F.Supp.3d 205, 215 (W.D. N.Y. Oct. 12, 2022); Doc. 35 at 22-23. Instead of relinquishing these facially defunct claims before filing, Plaintiff forced Defendant to move to dismiss before "withdrawing" them. *See* Doc. 35 at 22-23; Doc. 21 at 1, n.1.

Plaintiff's Complaint had no "reasonable factual basis," thus demonstrating that a losing argument *can* be the same as a frivolous one.[8]  *See Figueira*, 2009 WL 10697979, *1; *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (citing Fed. R. Civ. P. 11(b)(3)).

*Devey*, indistinguishable from the instant matter but for a new plaintiff and heading, was dismissed after the court recognized that the claims were "based on a selective reading of the brewing instructions."[9] 635 F.Supp.3d at 212. Recognizing the same glaring pitfall that this Court did, the *Devey* court further noted that, "by focusing solely on the instructions for brewing a *single* serving, plaintiff's calculation completely overlooks the brewing instructions on the label for larger batches, which offer a significantly higher potential yield." *Id.* (emphasis original). Indeed, as this Court held, the factual basis for her claims was entirely "premised on the position that she cast her eyes only upon the single serve brew

---

[8] Plaintiff's counsel are not strangers to losing arguments. *See* Doc. 35 at 18, n. 6. The Court's own investigation into their cases in the Middle District did not indicate any dispositive motion which they had prevailed on. *See* Court's Exhibit 1; *see also Devey*, 635 F.Supp.3d at n.3 (noting that the "vast majority [of Sheehan's cases] have already resulted in dismissal" and collecting cases).

[9] Notably, the Complaint here was not tailored in any way to respond to the losing arguments from the New York court, nor did it evidence any evolved or new legal strategy—it was practically identical. *Compare* Doc. 1 *with Devey v. Big Lots, Inc.*, No. 6:21-cv-6688-DGL, Doc. 1 (Nov. 11, 2021).

instructions" — in other words, there was no reasonable basis for Plaintiff's claims. Doc. 29; *see also Devey*, 635 F.Supp.3d at 212.

Plaintiff attempts to justify her claims via a 2012 FTC-commissioned study finding that consumers expected "about" the full amount of advertised "up to" savings in energy costs from installing replacement home windows. *See* Doc. 37 at 8, n.1 (citing *FTC Report: Many Consumers Believe "Up To" Claims Promise Maximum Results*, FEDERAL TRADE COMMISSION (June 29, 2012), https://www.ftc.gov/news-events/news/press-releases/2012/06/ftc-report-many-consumers-believe-claims-promise-maximum-results); Manoj Hastak & Dennis Murphy, *Effects of a Bristol Windows Advertisement with an "Up To" Savings Claim on Consumer Take-Away and Beliefs*, FEDERAL TRADE COMMISSION at 18-19 (2012), https://www.ftc.gov/sites/default/files/documents/reports/effects-bristol-windows-advertisement-savings-claim-consumer-take-away-beliefs/120629bristolwindowsreport.pdf.

This study, however, is based on a distinguishable, specific usage of the "up to" phrasing. *See* Hastak & Murphy, *supra* at 3-5 (describing survey conducted only regarding consumer take-aways from purported "up to" energy cost savings in window replacement advertisements). Moreover, the study itself characterized

users as expecting "about" the amount shown on an "up to" advertisement[10]—counseling that the FTC would likely find little to no misrepresentation where a product displaying "up to 210 servings" on its label actually yields at least 190 cups—or "about" the amount advertised.[11] *See id.* at 18-19.

Though a lawsuit brought under FDUPTA may be based upon "[t]he standards of unfairness and deception set forth and interpreted by the [FTC] *or the federal courts*," a solitary study about window advertisements and energy savings does not serve as a basis for Plaintiff's frivolous claims. *See* Fla. Stat. § 501.203(3)(b) (emphasis added). Indeed, citations to broad statements cherry-picked from unrelated FTC documents like, "consumers expect a 'reasonable basis' for claims [on product labels]" are not probative. *See, e.g.*, Doc. 37 at 9. This Court and others have already determined that Defendant *had* a reasonable basis for the statements on its Product's label—Plaintiff and her counsel simply chose to ignore it. *See, e.g.*, *infra*; Doc. 29 at 11.

As further evidence of Sheehan's bad faith, Defendant also argues that the "independent laboratory analysis" cited in Plaintiff's Complaint was fabricated. Doc. 35 at 23. In her Response, Plaintiff purports to have produced this report,

---

[10] As opposed to the "exact" amount shown.

[11] Plaintiff's regurgitated arguments regarding the *Womick* case have already been addressed and distinguished in this Court's prior order. *See* Doc. 29 at 10, n. 6.

however, as noted by Defendant, it remains unauthenticated and is little more than a single line of an excel spreadsheet with some data in it. Doc. 37-1; Doc. 41 at 6-7. Moreover, neither Sheehan nor Wright offered any further support for this report at the hearing.[12]

Plaintiff's claims were very unlikely to succeed when Sheehan filed them in New York the first time, and they were "patently implausible" when Plaintiff filed them again in this district, in bad faith, seeking a better outcome. Doc. 29 at 11. This factor plainly supports of an award of fees and costs. *See Johnson*, 9 F.4th at 1314.

### 3. Deterrence

Defendant contends that a fee award here would deter "parties and counsel from adopting similar vexatious tactics." Doc. 35 at 13. Plaintiff's counsel counters with a kitchen sink's array of unsupported, discombobulated pleas this Court has already rejected—"Sheehan was not counsel of record[;]" "[a]n award…under these circumstances would undermine consumer protection[;]" "there is no evidence that

---

[12] This allegation is troubling, nevertheless— particularly so because a similar shortcoming provided partial grounds for Judge Scullin in the Northern District of New York to find Sheehan in contempt of court. *See Brownell v. Starbucks Coffee Co.*, No. 5:22-cv-1199-FJS/ATB, Doc. 41 (N.D.N.Y Nov. 30, 2023). Among other reasons, the court found that the "independent laboratory analysis" asserted in the complaint was not conducted until more than two months *after* it was filed. *Id.* at 12. Judge Scullin also found that "Sheehan is aware that he files class action lawsuits primarily pertaining to allegedly false labeling on consumer products…that plainly do not meet the pleading requirements for such claims on their faces." *Id.* at 13-14. This only further bolsters the Court's finding that Sheehan (and Wright) knowingly filed the frivolous Complaint in this case.

[Plaintiff] advanced a known frivolous [cause of action][;]" "deterrence…is…directed…to deter similarly situated litigants[;]" and "one court['s dismissal]…has no bearing on this Court." Doc. 37 at 11-12. They even go so far as to state: "[t]hat a federal court in Florida has already dismissed the Complaint should serve as a sufficient deterrent for potential plaintiffs wishing to challenge the Product at issue here in another Florida court." *Id.* at 12. Maybe it will deter some, but as Plaintiff's counsel have demonstrated in this very case, it will not serve as a sufficient deterrent to prevent *them* from re-filing this suit against Defendant in Texas or Ohio or the 46 other states from which they have yet to be dismissed.

In this context, "fees would serve as a deterrent against…raising issues previously rejected…*i.e.*, seeking a second bite at the apple." *Armstrong*, 2023 WL 9196688 at *9. Without a monetary penalty, this Court's admonishment would simply join the chorus of courts around this nation warning Sheehan to abide by the standards and rules governing this profession. *See Devey*, 635 F.Supp.3d at 3-4, n.2; *Polar Corp.*, No. 1:22-cv-649, Doc. 40 at 1 ("The theory of the case was not close to viable…Going forward, counsel should proceed with eyes wide open."). Absent a financial cost for their intransigence, Plaintiff's counsel—and the plaintiffs they recruit—will continue filing frivolous lawsuits around the nation with impunity.

**4. Remaining Factors**

As to the remaining factors, the Court agrees with Defendant's arguments and notes that Plaintiff did not even bother to respond to them, effectively conceding their merit.[13] *See* Doc. 37 at 13-21. While it is unknown whether Plaintiff herself has any ability to pay, this factor carries little weight in the context of this action because her counsel will be jointly liable for the sanction. Likewise, there were no improper defenses raised by Defendant and it suffices to say that Plaintiff's action raised no "significant legal question" for this Court to decide under FDUPTA law. *See Forte*, 336 So.3d at 321; *see also generally* Doc. 29. These remaining factors do not move the dial for Plaintiff.

**5. Fraud on the Court[14]**

The most troubling conduct by Plaintiff's counsel in this action, however, has been revealed through their startling argument and admissions in response to Defendant's instant Motion. *See* Doc. 37. In their Response, Plaintiff—through Wright—incredibly contends that Sheehan was not an attorney of record in this

---

[13] *See infra* at n.4 (citing *Glass*, 786 F. Supp. 2d at 210).

[14] As a result of the peculiarities of this case, the Court supplements the traditional FDUPTA factors with a consideration of whether Plaintiff's counsel's litigation conduct constitutes a fraud on the court.

matter simply because he had never complied with the Court's order to file a motion for *pro hac vice* admission. *See id.*

The Court, of its own volition, performed a search of the CM/ECF database for the Middle District of Florida to determine whether Sheehan's practice in this case is symptomatic of a more widespread strategy.[15] *See Johnson*, 9 F.4th at 1314. The results of that survey are troubling. *See* Court's Exhibit 1. Sheehan has appeared in twenty-nine cases in the Middle District of Florida as a counsel for plaintiffs. *Id.* In twenty-four of those cases he has been explicitly directed to move for *pro hac vice* admission—he complied with that direction only twice.[16] *Id.*; *see also, e.g.*, Doc. 3. Sheehan has not been admitted *pro hac vice* in any of the twelve cases that remain pending in this district. *See* Court's Exhibit 1.

Neither of Plaintiff's counsel—in their papers or their appearances—have offered any sincere explanation for the conduct that Defendant's counsel and the Court have brought to light.[17] *See* Doc. 37 at 15-24. Wright apologetically pledged

---

[15] Of course, this represents only a small fraction of Sheehan's portfolio, which extends all around the country. *See* Doc. 29 at 3-4, n.2 (citing *Matthews v. Polar Corp.*, No. 1:22-cv-649, Doc. 36, Doc. 36-1 (N.D. Ill. Apr. 6, 2023) (point to spreadsheet Sheehan was ordered to file identifying hundreds of cases he is involved with in district courts around the nation)

[16] It is telling that those two instances are the only two cases Sheehan is involved with in the Middle District in which Wright is *not* his co-counsel. *See* Court's Exhibit 1. It would appear that those attorneys undertook to familiarize themselves with the Local Rules of this district.

[17] Wright's meek proffer at the close of the hearing (and earlier) that he was not aware of the *Devey* case's existence before filing the Complaint in this matter not only stretches the bounds of his credibility to breaking point but, if true, evidences his unwillingness to undertake even the

to remove Sheehan from all of these dockets, asserting at the hearing that he did not

think that Sheehan's (obvious) involvement in Durant's representation constituted

an appearance unless he filed a motion for special admission.[18]  Thus, goes his story,

his haste in acting to correct this "misunderstanding" plainly shows this was an

innocent, harmless error. Unfortunately, however, this story fails to square with the

facts.

First, Sheehan's flagrant disregard for the Local Rules is sufficient grounds

for sanctions in its own right. "A court has the inherent authority to sanction

lawyers when they violate a court's local rules or the rules regulating the bar." *In re*

*Engle Cases*, 283 F.Supp.3d 1174, 1242 (M.D. Fla. Oct. 18, 2017) (citing *Thomas v.*

*Tenneco Packaging Co.*, 293 F.3d 1306, 1322–23 (11th Cir. 2002)). The Local Rules

---

most basic act of diligence to verify the veracity and integrity of his filings in federal court (to say nothing of his refusal to respect the Local Rules of the district in which he has at least 27 cases filed). *See Devey v. Big Lots, Inc.*, 635 F.Supp.3d 205, (W.D. N.Y. Oct. 12, 2022).

Needless to say, Wright's other feeble excuse that an unspecified clerk in the Southern District of Florida told him that Sheehan need not file an application for *pro hac vice* admission is similarly lacking in credibility and relevance.

[18] Wright certified at the Hearing that he had filed notices in all of his pending federal cases requesting that Sheehan "be removed from the notification of electronic filing (NEF) list." *See, e.g., Wilmot v. Ricola USA, Inc.*, No. 6:23-cv-1709-WBB-RMN, Doc. 30 (M.D. Fla. Jun. 19, 2024). Several of these notices have already been rejected after the presiding jurists recognized the same thing this Court recognized—that Sheehan cannot have his cake and eat it, too. *See, e.g., Alvarado v. Walmart Inc.*, No. 8:23-cv-2592-SDM-SPF, Doc. 14 (M.D. Fla. Jun. 20, 2024) ("Presumably, Wright requests to withdraw Sheehan as counsel for the plaintiff. But the 'request' violates Local Rule 2.02…"); *see also* Local Rule 2.02(b)(1) ("A lawyer's pleading, motion, or other paper serves as a lawyer's appearance in an action."), Local Rule 2.02(c) ("If a lawyer appears, the lawyer cannot without leave of court abandon, or withdraw from, the action.").

plainly proscribe the manner in which Sheehan has represented his client in this

action:

- **Local Rule 2.01(a):** "Membership or special admission in the Middle District bar *is necessary to practice in the Middle District.*" (emphasis added).
- **Local Rule 2.01(c)** *et seq*: "A lawyer *can move* for special admission in a case in the Middle District if the lawyer…(3) has not abused the privilege of special admission by maintaining a regular practice of law in Florida…" (emphasis added) (listing requirements for special admission).
- **Local Rule 2.01(d):** "In an *extraordinary circumstance,* such as an emergency hearing, a lawyer who is not…specially admitted *can move* for temporary admission lasting no longer than thirty days *if* the lawyer appears eligible for…special admission *and applies for*…special admission *within seven days* after moving for temporary admission." (emphasis added).
- **Local Rule 2.02(b)(1):** "A lawyer's pleading, motion, or other paper serves as a lawyer's appearance in an action."
- **Local Rule 2.02(c):** "If a lawyer appears, the lawyer cannot without leave of court abandon, or withdraw from, the action."

Sheehan's unabashed violations of the Local Rules can only represent a concerted

effort to facilitate his improper "maintain[ance of] a regular practice of law in

Florida." Local Rule 2.01(c)(3).

Moreover, this cannot be attributed to the kind of misunderstanding that

Wright and Sheehan begged this Court to credit at the hearing. Its pervasiveness

belies any such explanation—as do Plaintiff's absurd arguments in her Response to

Defendant's Motion. Rather than owning up to the "confusion" explanation that

Wright and Sheehan exhibited in open court in their papers, Plaintiff vigorously

denied Sheehan's involvement in this matter to the point of alleging that sanctioning him would violate his due process rights. Doc. 37 at 17; *see also* Doc. 41-4 (docket entry receipt showing Sheehan received notice of Defendant's Motion to four different email addresses).

All the while, both of Plaintiff's counsel knew that Sheehan's name appeared on multiple filings in which he represented his *pro hac vice* application was "forthcoming." Doc. 1 at 18 (Sheehan's signature on the Complaint, indicating that his application for *pro hac vice* admission is "forthcoming"); Doc. 7 (indicating same on notice of related action); Doc. 8 (indicating same on corporate disclosure statement—and confirming Sheehan's financial stake in this case). They both also knew that Sheehan regularly participated in communications with his client and with opposing counsel. Doc. 41-2 (Sheehan's email communications with opposing counsel); Doc. 41-3 (same). And they both knew the Local Rules—as evidenced by Plaintiff's absurd admission (under the guise of a counter-argument) that "Attorney Sheehan was never allowed to file actions in this Court." Doc. 37 at 18.[19]

---

[19]   During its investigation into Sheehan and Wright's other cases in the Middle District, the Court discovered that they may even have been made aware of the dubious nature of their strategy in February this year. *See Volinsky v. Hisense USA Corp.*, No. 8:24-cv-117-MSS-AAS, Doc. 8 (M.D. Fla. Feb. 13, 2024). In *Volinksy*, Wright curiously filed a notice—nearly identical to those he has filed in his other active cases in the past weeks—requesting that Sheehan be removed from the case. *Id.* There is no indication on that docket of what prompted Wright's filing, nor is there any docketed action—by the court or the defendant—responding to it. *See generally id.* Nevertheless, this discovery raises even more questions about the extent of their bad faith. One thing is clear,

Sheehan has undeniably acted in bad faith throughout this case—in addition to perpetrating a fraud on this Court. Consequently, Defendant's Motion for Sanctions, incident to the Court's inherent power, is due to be **GRANTED**.

Although Defendant moved solely for sanctions against Sheehan, the Court finds that Wright, as lead counsel for Plaintiff, has been knowingly and willingly complicit in this abuse. Therefore, Wright will be afforded an opportunity to **SHOW CAUSE** why these sanctions should not be imposed against him as well.

### III.   Conclusion

Accordingly, it is **ORDERED** that Defendant's Motion for Attorney's Fees and Costs and for Sanctions is hereby **GRANTED**.

**Plaintiff and her attorney, Spencer I. Sheehan**, **are liable** for the reasonable attorney's fees and costs Defendant is entitled to under the fee shifting provisions of the Florida statutes and this Court's inherent authority.

It is further **ORDERED** that Plaintiff's Lead Counsel, William C. Wright, shall **SHOW CAUSE in writing by July 17, 2024,** why he should not be sanctioned alongside Sheehan for his role in Sheehan's misconduct.

The Court will determine the final monetary award pursuant to its prior Order (Doc. 43) setting forth the briefing schedule for Defendant's application for

---

however: Sheehan has engaged in a concerted effort to defraud this Court and likely many, many others.

fees and costs and reserves jurisdiction over this matter to determine whether Wright will share in the responsibility for this award.

**DONE** and **ORDERED** in Orlando, Florida on July 3, 2024.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties