# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

PEGGY DURANT and SPENCER
SHEEHAN,

          Plaintiffs,

v.                                                    Case No:   5:23-cv-561-GAP-PRL

BIG LOTS, INC.,

          Defendant

_____

## ORDER

This cause came before the Court for consideration without oral argument on Defendant's Supplemental Motion on Amount of Attorney's Fees and Costs (Doc. 46). The Court has also considered Spencer Sheehan's Response in Opposition (Doc. 49) and Defendant's Reply (Doc. 51).

### I.      Background

This Court dismissed Plaintiff Peggy Durant's ("Plaintiff's") Complaint alleging violations of state consumer fraud and misleading advertising statutes on March 26, 2024, and entered Judgment in favor of Defendant Big Lots, Inc. ("Defendant") on May 1, 2024. Doc. 29; Doc. 33; Doc. 34. Pursuant to Local Rule

7.01(b), Defendant timely filed a Motion for Attorney's Fees on May 15, 2024, and requested a hearing. Doc. 35; Doc. 36.

On June 26, 2024, the Court heard oral argument from Plaintiff's counsel, Spencer I. Sheehan ("Sheehan") and William C. Wright ("Wright"), regarding alleged misconduct brought to light in the parties' briefing of Defendant's Motion for Attorney's Fees and through the Court's own investigations. *See* Doc. 40; Doc. 42. The Court also heard argument over the alleged frivolous nature of Plaintiff's case and Complaint from the outset. *See* Doc. 42. At the close of the hearing, the Court indicated that it would grant Defendant's motion and set a briefing schedule for the instant Supplemental Fee Application. Doc. 42; Doc. 43.

On July 3, 2024, the Court granted Defendant's Motion for Attorney's Fees based on its statutory right as the prevailing party under Fla. Stat. §§ 501.2105(1) and 817.41(6), and extended liability for those fees to Plaintiff's attorney, Sheehan, based on the Court's inherent power to sanction misconduct.[1] Doc. 44. Defendant

---

[1] In its Order granting Defendant's Motion for Attorney's Fees and For Sanctions, the Court sanctioned Sheehan for bad faith, filing a frivolous lawsuit, and for fraud on the Court. Doc. 44 at 7-17. Sheehan, a New York lawyer who is not admitted to practice law in the state of Florida, had engaged in a pattern of adding himself as co-counsel on cases in federal courts in Florida but—despite representing that applications were forthcoming—never moved for *pro hac vice* admission. *Id.* at 17-22. The Court further issued an Order to Show Cause to Wright, a Florida attorney who is co-counsel on nearly all of Sheehan's other cases in Florida federal courts, as to why liability for these sanctions should not be extended to him. *Id.* at 22. In his Response, Wright denied any knowledge that Sheehan had previously brought a near identical suit against Defendant along with any awareness of Sheehan's failure to file *pro hac vice* applications. *See* Doc. 47. Upon review, the Court discharged the Order to Show Cause against Wright. Doc. 50.

filed its Supplemental Motion ("Supplemental Motion") for Attorney's Fees on July 10, 2024; Sheehan responded with objections on his own behalf on July 19th;[2] and Defendant Replied on July 26th. Doc. 43; Doc. 46; Doc. 49; Doc. 51. The issue is ripe for resolution.[3]

## II.    Legal Standard

"The attorney's fee is…a very important factor in the administration of justice, and if it is not determined with proper relation to that fact[,] it results in a species of social malpractice that undermines the confidence of the public in the bench and bar." *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1149 (Fla. 1985). The amount of any attorney fee award in Florida is determined "on the facts of each case" and structured under the federal lodestar approach. *Id.* at 1150.

Courts should consider the following factors in determining reasonable attorney's fees:

---

[2] Sheehan's Opposition to Defendant's Supplemental Motion is filed solely on his own behalf—neither he nor Wright bothered to file any objections on behalf of Plaintiff. *See* Doc. 49 at 1, 15 ("Comes now, Spencer Sheehan, Esq…by and through his undersigned counsel…"); *see also generally* Docket. Consequently, insofar as Plaintiff Peggy Durant is concerned, Defendant's Supplemental Motion is "unopposed." *See* Local Rule 3.01(c) ("If a party fails to timely respond, the motion is subject to treatment as unopposed.").

[3] Neither Plaintiff nor Sheehan requested an evidentiary hearing on the issue of fees. *See* Doc. 43 at 1 ("Plaintiff and her counsel are entitled to a hearing regarding the amount of fees and, if they so request, should indicate so in their objection."); *see generally* Doc. 49; *see also Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("It is perfectly proper to award attorney's fees based solely on affidavits in the record.").

(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

*Joyce v. Federated Nat. Ins. Co.*, 228 So.3d 1122, 1126 (Fla. 2017) (citing *Rowe*, 472 So.2d at 1150 & n.5); *see also* Florida Rule of Professional Conduct 4-1.5.

First, trial courts must "determine the lodestar amount, which is the number of attorney hours reasonably expended multiplied by a reasonable hourly rate." *Joyce*, 228 So.3d at 1126 (citing *Rowe*, 472 So.2d at 1150-51). "In calculating the hourly rate, the trial court should look to all eight *Rowe* factors except the 'time and labor required,' the 'novelty and difficulty of the question involved,' the 'results obtained,' and '[w]hether the fee is fixed or contingent.' "[4] *Id.* "The trial court must

_____

[4] "The 'time and labor required' and the 'novelty and difficulty of the question involved' are excluded from the calculation of the hourly rate because those factors are already taken into account in calculating the reasonable number of hours. *Joyce v. Federated Nat. Ins. Co.*, 228 So.3d 1122, 1126 (Fla. 2017) (citing *Rowe*, 472 So.2d at 1150 ("The 'novelty and difficulty of the question

set forth 'specific findings' as to its determination of the number of hours, the hourly rate, and any reduction or enhancement factors." *Id.* However, the Court can rely on its own knowledge and expertise concerning a reasonable attorney's fee. *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

"Once the court arrives at the lodestar figure, it may add or subtract from the fee based upon a 'contingency risk' factor and the 'results obtained.' " *Rowe*, 472 So.2d at 1151. Though "[t]he contingency risk factor is significant in personal injury cases," this not being one of those, it is of no import here. *Id.*

### III.    Analysis

As a threshold matter, Defendant has provided the Declaration of Adam Schachter ("Schachter") in support of its Supplemental Motion, who it engaged as an expert witness on reasonable attorney's fees. *See* Doc. 46 at 18-22; Doc. 46-2. Schachter, who has been a member in good standing with the Florida Bar since 2003 and is admitted to practice in this Court, practices class action defense litigation in Florida and nationally. Doc. 46-2, ¶¶ 4-8. Upon review of Schachter's qualifications—and in the absence of any serious challenge from Sheehan—the

---

involved' should normally be reflected by the number of hours reasonably expended on the litigation.")).

Court finds that Schachter is qualified to opine on the issue of reasonable attorney's fees in the Middle District of Florida. *See* Doc. 49 at 10-11.

### A. Objections

At the outset, the Court acknowledges yet another example of Sheehan's self-serving conduct in this case. As required by Local Rule 7.01(c), Defendant's counsel emailed their counterparts for Plaintiff on July 3, 2024, to schedule a meet-and-confer for July 8th to determine which, if any, fee entries Plaintiff and Sheehan objected to and whether any other outstanding issues remained. Doc. 46 at 3-4. Wright finally responded to that email on July 8th, agreeing to a late afternoon phone call. *Id.* at 3.

Prior to the call, Defendant's counsel shared a spreadsheet showing detailed time entries with narrative descriptions supporting the total fees they anticipated requesting in their Supplemental Motion. *Id.*; *see also* Doc. 46-1 at 10-11, 13-18, 20-22. Defendant's counsel described the spreadsheet and highlighted its general parameters on the call to both Wright and Sheehan, after which they requested twenty-four hours to review the entries, pledging to provide their objections by 6:00 PM on July 9, 2024. Doc. 46 at 3-4; Doc. 46-1 at 10-11. Instead, Sheehan emailed Defendant's counsel on July 9th, stating only that he "ha[d] nothing to offer as comments at this time." *Id.*; Doc. 46-1 at 11, 19-22.

Consequently, Defendant filed is Motion under the impression that no disputed issues remained and that neither Plaintiff nor Sheehan objected to the fees sought. *See* Doc. 46 at 4. The Local Rules only contemplate an attached legal memorandum where there is a "disputed issue." *See* Local Rule 7.01(c)(3)-(4). Fortunately, Defendant's counsel foresaw the likelihood that Sheehan would ultimately object to the fees sought and prepared their Supplemental Motion accordingly, fully briefing the legal and factual support for the fees they seek. *See* Doc. 46 at 4-25.

Sheehan correctly notes that this Court explicitly afforded them until July 20, 2024, to file an objection to Defendant's Supplemental Motion. Doc. 49 at 2, n.1; *see also* Doc. 43, ¶ 2. However, Sheehan's unwillingness to provide *any* objections to Defendant prior to the filing of its motion—as promised and as is plainly contemplated by the Local Rules—is regrettable and ultimately indicative of his flawed approach to the practice of law more generally. However, because the Court explicitly allowed them until July 20, 2024, "to file any objection to those costs and fees," it proceeds to analyze Defendant's Supplemental Motion in the context of Sheehan's Opposition. *See* Doc. 43.

### B. *The Lodestar Amount*

The lodestar amount is the number of attorney hours reasonably expended multiplied by a reasonable hourly rate. *See Joyce*, 228 So.2d at 1126.

### 1.  Number of Hours

"Although the fee applicant has the burden of establishing its entitlement to an award of attorneys' fees, the opponent of the fee has the burden of pointing out with specificity which hours should be deducted." *Levine v. Keaster*, 862 So.2d 876, 882 (Fla. Dist. Ct. App. 2003). Defendant seeks to recover fees for a total of 182.4 hours expended: 121.8 hours on its Motion to Dismiss and 60.6 hours on its Motion for Attorney's Fees. Doc. 46 at 18.

In support of its request, Defendant attached the Declaration of Jacob Harper ("Harper's Declaration"), who described the firm's timekeeping practices. Doc. 46-1 at 6-7. Harper highlighted that Defendant—to ensure the total fees sought were reasonable—chose not to seek to recover for any time billed for "case management, procedural motions, review of and compliance with the Local Rules of this District, preparation for motions that ultimately were not filed…certain strategy discussions and analysis, and strategy and travel time attributable to the hearing," in addition to the instant Supplemental Motion, despite its entitlement to do so. *Id.* at 7; Doc. 46 at 5, n.3; *Condren v. Bell*, 853 So.2d 609, 609-10 (Fla. Dist. Ct. App. 2003) ("[B]ecause the award of attorney's fees and costs is a sanction it should include those attorney's fees incurred in determining the amount of fees to be awarded.") (internal quotation marks omitted).

Defendant has also presented detailed time entries delineating the hours worked and fees sought for each attorney on each motion. Doc. 46-1 at 9. In addition to summary tables in Harper's Declaration, Defendant's Exhibit A to its Supplemental Motion painstakingly denotes for every time entry the: date; timekeeper; title; rate; hours expended; dollar amount; and a substantial narrative description. *Id.* at 13-18. These descriptions are more than sufficient to enable the Court's review. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.").

Sheehan makes several arguments in support of his contention that the hours submitted by Defendant are unreasonable, but his single-word objections superimposed on Defendant's Exhibit A are "too vague to assist the [C]ourt in determining the propriety of the time entries."[5] *Gray v. Novell, Inc.*, No. 8:06–CV–1950–T–33TGW, 2012 WL 3871872, *8 (M.D. Fla. Sept. 6, 2012); *see* Doc. 49 at 3-7. Apart from repetitive and generalized claims of duplicitous, vague entries, Sheehan "provides no further explanation" beyond one-word objections listed in the

---

[5] *See generally infra* note 2 (recognizing that Sheehan's Response speaks only for himself and not Plaintiff).

margins of Defendant's Exhibit A. *See River Cross Land Co., LLC v. Seminole County*, No. 6:18-cv-1646-ACC-LHP, 2022 WL 20622333, *15 (M.D. Fla. Dec. 12, 2022). Though his arguments point to several general theories—which the Court will address in turn—Sheehan's objections plainly fall short of the requirement of Local Rule 7.01(d) that any response to a supplemental motion on fees "must detail the basis for *each* objection." (emphasis added). Nevertheless, the Court briefly addresses Sheehan's broad objections.

First, Sheehan complains that Defendant employed multiple attorneys to work on this case. Doc. 49 at 3. However, as he admits, "there is nothing unusual about a client having multiple attorneys working on their case." *Id.*; *see also Norman*, 836 F.3d at 1302. Sheehan correctly identifies that Defendant bears the burden of proving the "distinct contribution of each lawyer to the case." Doc. 49 at 3 (citing *Norman*, 836 F.3d at 1302); *see also* Doc. 46-1 at 13-18. But as this Court has already recognized, Defendant has precisely described just that. *See* Doc. 46-1 at 13-18.

Sheehan insists that the time entries Defendant has provided are "duplicative and unreasonable," but provides no real substantive argument. Doc. 49 at 7. Reciting case law language, he argues that multiple entries describing work on the same motions are so vague that he and the Court are unable to determine the distinct contributions of each attorney. Doc. 49 at 7-8. Sheehan points to Defendant's time entries like "worked on motion to dismiss," "prepare motion to dismiss," or

"revise motion to dismiss." Doc. 39 at 3-4. Like most of the positions Sheehan has taken during this litigation, this one, too, is without merit.

Defendant's counsel prepared a 22-page Motion to Dismiss outlining several, alternative theories for dismissal, in addition to a substantial recounting of the troubling history between Defendant, Sheehan, and the courts. Doc. 46-1 at 8-9; *see also, e.g.*, Doc. 11 at *i*, 3-6. The time entries provided by Defendant accurately reflect the complexity of the legal issues involved and *plainly* delineate the distinct contributions of each attorney. *See, e.g.*, Doc. 46-1 at 13 (J. Elie-Meyers entry (1/8/2024): "Prepare motion to dismiss complaint"; H. Canner entry (1/9/2024): "Revise draft motion to dismiss and confer with J. Harper and J. Elie-Meyers regarding same"; J. Elie-Meyers entry (1/9/2024): "Draft motion to dismiss revisions (0.3)"). Each attorney clearly had different roles regarding the researching, drafting, editing, and revising of these motions. *See id.* Moreover, Harper's Declaration provides even more detail regarding the hours spent on each motion. Doc. 46-1 at 8.

Though some of Defendant's time entries include the basic "work on motion to dismiss," the majority make clear distinctions between the actions taken regarding the motion to dismiss—such as conferring and strategizing, researching, drafting, or editing and revisory work. *See, e.g., id.* at 14 ("Legal research on Florida deceptive advertising law for motion to dismiss (4.5); prepare motion to dismiss

(0.4)"). Indeed, as Defendant points out, Courts in this district routinely find such entries to be sufficiently detailed for these purposes. *See, e.g.*, *Houston Specialty Ins. Co. v. Vaughn*, No: 8:14-cv-1187-T-17JSS, 2019 WL 4395287, *5 (M.D. Fla. Jul. 9, 2019).

Sheehan also contends that seven of Defendant's time entries constitute impermissible block billing—though he does not address any examples in particular. Doc. 49 at 6-7. He complains that some entries account for a full day's work "without providing any sufficient description." *Id.* There are four entries for which Defendant asserts that 8.1, 10.9, 8.3, and 11.3 hours were expended on different days by two different people "[p]reparing [the] motion to dismiss," "[r]evis[ing] the motion to dismiss," and "[p]repar[ing] reply brief." Doc. 51-1 at 4-5. There is nothing out of the ordinary about spending eight- to eleven-hour days working on an important, dispositive motion—especially considering that the final 11.3 hour entry concerned the Reply brief and not the initial Motion to Dismiss.[6] *See Norman*, 836 F.2d at 1303.

The remaining three entries which Sheehan has labelled as block billing may include multiple tasks but the narrative description plainly delineates those tasks.

------

[6] The Court further recognizes that spending long days working on a dispositive motion is especially ordinary when those long hours are expended in the days leading up to its docketing. *See* Doc. 46-1 at 14 (showing that the time entries of 8.1, 10.9, and 8.3 were on January 7th, 8th, and 9th, 2024—Defendant's motion to dismiss was filed on January 12, 2024).

Doc. 51-1 at 3, 7. "The mere fact that an attorney includes more than one task in a single billing entry is not, in itself, evidence of block-billing." *Franklin v. Hartford Life Ins. Co.*, No. 8:07-cv-1400-T-23MAP, 2010 WL 916682, *3 (M.D. Fla. Mar. 10, 2010). Where Defendant has delineated each task and assigned specific time allotments for each task in the narrative description, there is no cause to reduce its hours. *See id.* This is especially so where each task is described with sufficient particularity to determine that the work being compensated for was not "mundane, clerical or [that] which did not require the full exercise of an attorney's education and judgment." *See Norman*, 836 F.2d at 1306.

Ultimately, Defendant's counsel has provided ample support for the hours it has spent litigating this class action lawsuit which had the potential to cause its client serious financial and reputational harm. This Court finds, based on its own knowledge and expertise, that the 121.8 hours Defendant's counsel spent on its Motion to Dismiss and the 60.6 hours it spent on its Motion for Attorney's Fees are reasonable given the novelty and difficulty presented by aggressively defending Sheehan's frivolous lawsuit—for the second time. *See Norman*, 836 F.2d at 1303. The time and labor described in significant detail by Defendant's counsel in their Supplemental Motion does not exceed that required for a case of this magnitude.

The Court's conclusion is bolstered by Schachter's opinion. Like the Court, Schachter found no duplicative tasks and was more than satisfied with the attention

to detail in Defendant's Supplemental Motion. Doc. 46-2, ¶¶ 28.(a.)-(b.). Indeed, Schachter found that Defendant's counsel's "detailed, itemized descriptions" did not constitute block billing and that the descriptions were sufficient to allow him to evaluate the reasonableness of the entries. *Id.*, ¶ 28.(b.) Schachter also recognized that the delineation of drafting versus revisory work between "efficient" associates and partners was "reasonable and expected." *Id,* ¶ 28.(c.). Ultimately, Schachter opined that the hours claimed by Defendant's counsel "are reasonable and in line with what I would expect for such briefing, particularly in the context of a vexatious attorney with a history of bad faith and misleading litigation conduct."[7] *Id.*, ¶ 28.(e.).

### 2.  Hourly Rate

A reasonable hourly rate "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* Evidence of rates may be shown through direct evidence "or by opinion evidence." *Id.* "The weight to be given to opinion evidence

---

[7] Schachter recognized that Defendant's "significant, generous" choice to not bill for certain fees—whose value he estimated to exceed $25,000—which included travel to Orlando for the hearing (and the associated preparation) "supports the conclusion that the hours expended by counsel and which [Defendant] seeks to recover are reasonable." Doc. 46-2, ¶ 28.(d.).

of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge."[8] *Id.* The Court calculates the hourly rate based on an overall assessment of the *Rowe* factors.[9] *Joyce*, 228 so.3d at 1126.

As the parties recognize, the "general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.' " *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). Under such circumstances, a fee applicant seeking to recover non-local rates normally "must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.* However, the Eleventh Circuit has recognized that there are cases "where use of an attorney from a higher-rate market who had extensive prior experience with a particular factual situation could be justified because of efficiencies resulting from that prior experience." *Id.* at

---

[8] *See Norman v. Housing Auth. Of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("It is perfectly proper to award attorney's fees based solely on affidavits in the record.").

[9] *See infra* at s. II (courts do not examine the "time and labor required," the "novelty and difficulty of the question involved," the "results obtained," or "whether the fee is fixed or contingent" in calculating the hourly rate).

438. Indeed, such a practice "could be reasonable and cost-sensible, especially if it resulted in lower costs than would otherwise be necessary." *Id.*

Defendant here, a nationwide retailer,[10] seeks to recover fees for its Los Angeles-based attorneys based on the following rates:[11]

| Timekeeper | Title | Year | Hourly Rate |
|---|---|---|---|
| Jacob Harper | Partner | 2023 | $825 |
|  |  | 2024 | $950 |
| Heather Canner | Counsel | 2023 | $715 |
|  |  | 2024 | $815 |
| Joseph Elie-Meyers | Associate | 2023 | $645 |
|  |  | 2024 | $725 |
| Emily Parsons | Associate | 2024 | $625 |

Doc. 46-1 at 6. Defendant argues that, pursuant to *Barnes*, its attorneys' particularized experience with Sheehan's frivolous product mislabeling class action lawsuits, including a nearly identical prior case in another jurisdiction with

---

[10] Defendant is an Ohio corporation with its principal place of business in Ohio. Doc. 1, ¶ 16.

[11] *See* Doc. 46 at 10, n.4 ("Three of the four timekeepers have differing rates in 2023 and 2024 because [Defendant's counsel's] rates on this case increased January 1, 2024, in line with the increase in the market rate for attorneys of similar skill and experience.").

Defendant "warrant the award of rates above prevailing market rates in this District." Doc. 46 at 11.

Sheehan objects to Defendant's "excessively high" requested hourly rates as having "no reasonable justification." Doc. 49 at 11. His principal grounds for this argument emanate from his contention that the "relevant market" for the purposes of this case is Ocala, Florida, where the case was filed, and that Defendant's requested rates therefore greatly exceed local Ocala rates.[12] *Id.* at 8-11. However, Ocala is a small, rural division in the Middle District of Florida without a sitting district judge. Attorney rates in Ocala would normally be less than rates in the larger divisions of this Court like Orlando, Tampa, and Jacksonville. But in a case of this magnitude, a nationwide retailer defendant would most likely seek counsel from one of these larger divisions—if not from a regional legal market such as Atlanta, New York, or Los Angeles.

---

[12] Sheehan cites to a case out of the Ocala Division for the prospect that a reasonable hourly rate for this market is between $250 and $375. *Rizzo-Alderson v. Tawfik*, 5:17-cv-312-OC-37PRL, 2019 WL 3324298 (M.D. Fla. Jul. 1, 2019) *report and recommendation adopted Rizzo-Alderson v. Eihab H. Tawfik, M.D., P.A.*, 5:17-cv-312-OC-37PRL, 2019 WL 3323432 (M.D. Fla. Jul. 24, 2019). Unsurprisingly, however, Sheehan neglected to explain that the $250-375 rate described in *Tawfik* specifically applied to a run of the mill Fair Labor Standards Act ("FLSA") case—an entirely different animal to a proposed products liability class action against a national retailer. *Id.* at *3.

Sheehan also quibbles with the fact that Schachter allegedly opined about the reasonableness of attorney's fees in *Orlando*, when this is actually an *Ocala* case. Doc. 49 at 10. However, Schachter did not opine about the reasonableness of fees solely in Orlando, as Sheehan suggests; instead, he offered his opinion on rates which are "reasonable and justifiable in light of local rates *in the Middle District of Florida*," which is based on his familiarity with "rates typically charged by attorneys *in Florida*, including in Orlando." Doc. 46-2, ¶ 25 (emphasis added). Therefore, Schachter's opinions—which derive from his experience as a class action defense attorney in the Middle District and elsewhere in Florida—remain relevant to this Court's analysis. *See id.*, ¶ 4; *see also United States v. Tran*, No. 5:15-cv-60-Oc-41PRL, 2020 WL 9455589 (M.D. Fla. Nov. 23, 2020) ("This case was filed in Ocala, so the Magistrate Judge properly determined that Central Florida (which includes cities in the Middle District of Florida) is the applicable legal market.") (internal quotations omitted).

Based on the Court's own knowledge and experience as a commercial litigator and district judge for the past fifty years, I estimate that the rates charged by Defendant's counsel are approximately 25% higher than comparable counsel in the major legal markets in the Middle District of Florida. However, upon consideration of the *Rowe* factors and Schachter's testimony, the Court finds that

the extenuating circumstances of this case warrant Defendant's counsel's modestly higher rates.

First and foremost, this is not a run of the mill case; it is a national class action consumer products liability case. *See* Doc. 1. As Schachter recognized, "even arguably frivolous class actions have the effect of extorting often-large settlements from defendants in order to avoid bad publicity, the risk of a large, certified class, and other factors increasing exposure." Doc. 46-2, ¶ 14.(c.). Therefore, specialized counsel were required to adequately protect Defendant's interests. *Id.* Defendant's counsel—a functional expert when it comes to litigating against Sheehan and his clients—was a reasonable, if not expected, choice for retention. *See* Doc. 46 at 11-15; Doc. 46-2, ¶ 24; *see also infra* at 16.

Moreover, Defendant had already engaged the services of their counsel in defeating a nearly identical claim brought against it by another of Sheehan's clients in New York in the *Devey v. Big Lots, Inc.* case—where counsel also secured an early dismissal.[13] *See* Doc. 46 at 14; Doc. 46-2, ¶ 26.(c.); *see also Devey v. Big Lots, Inc.*, 635

---

[13] The *Rowe* factors consider not only the amounts involved, but also the nature and length of the professional relationship with the client and the specialized experience, reputation and ability of the attorneys performing the services. *See Rowe*, 472 So.2d at 1150 & n.5.

F.Supp.3d 205, 215 (W.D. N.Y. Oct. 12, 2022). Defendant specifically hired these attorneys because of their experience and with the goal of defeating and deterring Sheehan. Doc. 46 at 14; Doc. 46-2, ¶ 24. Sheehan submitted bad faith filings here, made incredulous allegations, and pursued meritless claims—all which might have led to delays and significantly higher expenses from attorneys unfamiliar with Sheehan's litigation style. *See* Doc. 46 at 14-16.

Instead, Defendant paid a premium for this expertise and plainly benefitted from the "particularly efficient and effective" representation of its counsel in this matter. *Id.* at 7. The proof is in the pudding. The results obtained for Defendant—the dismissal with prejudice of a Complaint alleging damages in excess of $5 million in addition to sanctions awarded against Sheehan—provide some of the strongest support for the reasonableness of Defense counsel's higher rate in this case. Doc. 46 at 7.

The Court's conclusion that Defendant's proposed lodestar figure is accurate is bolstered by the fact that Big Lots actually paid the fixed fee here. Doc. 46 at 17. What an attorney is actually paid by his clients is perhaps the strongest evidence of his market rate, as "determined by supply and demand." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Here, Defendant, a large, sophisticated consumer of legal

services, paid these rates, knowing that recovering such fees would not represent a typical outcome. Doc. 46 at 17.

The Court is ultimately able, and called upon, to plumb the depths of its own knowledge and experience when it comes to analyzing the reasonableness of any motion for attorney's fees. *Norman*, 836 F.2d at 1303. Having done so, I conclude that the hours claimed by Defendant's counsel were reasonable and necessary to properly defend this case. And, although Defense Counsel's rates are modestly higher than prevailing rates in the Middle District of Florida, those rates are not unreasonable in light of the particularized experience and expertise which they brought to the table.[14]

Accordingly, I find that the appropriate lodestar figure is **$144,047**. *See* Doc. 46-1 at 1, 9.

### 3.  Lodestar Enhancement

The Eleventh Circuit has recognized that, "[i]f the results obtained were exceptional, then some enhancement of the lodestar *might* be called for." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988)

---

[14] Defendant's proposed hourly rate is further justified by the fact that their calculation does not include hours incurred drafting the instant supplemental motion for fees and others which they have discounted. *See, e.g.*, Doc. 46 at 5, n.3; *see also infra* note 7.

(emphasis added). However, "[e]ven if the results obtained are exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed." *Id.* at 1302.

There is no cause here to adjust the lodestar or to apply any multipliers. To start, this is not a contingency fee-based case and therefore the public policy reasoning for any multiplier is significantly diminished. *See Rowe*, 472 So.2d at 1151. Moreover, the Court's acceptance of Defendant's Los Angeles rates in this market sufficiently accounts for any upward adjustment based on the "exceptional" results obtained. *See Norman*, 836 F.2d at 1302. No additional multiplier is called for.

### IV.    Conclusion

It is therefore **ORDERED** that Defendant's Supplemental Motion on Amount of Attorney's Fees and Costs (Doc. 46) is hereby **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** to the extent that Plaintiff and her attorney, Spencer I. Sheehan, are liable for the lodestar amount of **$144,047**, but the motion is **DENIED** with respect to the requested lodestar enhancement.

Judgment will be entered accordingly.

**DONE** and **ORDERED** in Orlando, Florida on September 25, 2024.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties